# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

DOLORES AHEARN,

                    Plaintiff,

-vs-                                     Case No.  6:11-cv-52-Orl-GJK

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

_____

## MEMORANDUM OF DECISION

Dolores Ahearn (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits. Doc. No. 1.  Claimant argues that the final decision of the Commissioner should be reversed and remanded for an award of benefits because the Administrative Law Judge (the "ALJ") erred by: 1) failing to state with particularity the weight given and the reasons therefor to the opinions of two consultative examining physicians, Drs. Seifer and Vara; 2) finding that Claimant did not suffer from a severe mental impairment at step-two and by failing to incorporate the limitations therefrom into the ALJ's residual functional capacity assessment (the "RFC"); 3) failing to address or mention Claimant's fibromyalgia diagnosis; 4) finding Claimant's statements not credible; 5) relying exclusively on the opinion of the non-examining state-agency consultants to determine Claimant's RFC; and 6) finding that the Claimant could perform her past-relevant work without receiving testimony from a vocational expert (the "VE") regarding that work or otherwise classifying Claimant's past-relevant work.  Doc. No. 21 at 1-22.  The Claimant also

argues that the ALJ and Appeals Council erred by failing to contact Claimant's treating rheumatologist, Dr. Sacher, regarding Claimant's fibromyalgia or, in the alternative, to order a consultative examination regarding the same.  Doc. No. 21 at 22-24.  In the alternative to reversing for an award of benefits, Claimant requests reversal and remand for further proceedings.  Doc. No. 21 at 24.  For the reasons set forth below, the final decision of the Commissioner is **REVERSED and REMANDED** for further proceedings because the ALJ erred **by failing to state with particularity the weight given, and the reasons therefor, to the opinions of Drs. Seifer and Vara.**

I.     BACKGROUND.

Claimant was born on December 13, 1962.  R. 151.  On March 19, 2007, Claimant filed an application for benefits alleging an onset of disability as of July 2, 2005, due to back problems, arthritis, thyroid problems, fibromyalgia, and depression.  R. 79-81, 85. Claimant's application was denied initially and upon reconsideration.  R. 79-81.

The record contains treatment records from Claimant's treating physician, Dr. Frederick Petersen, which show that Claimant has been diagnosed by him with chronic depression and/or a mood disorder since, January 11, 2005.  R. 232, 235-36.  Dr. Petersen strongly recommended counseling, but there is no indication Claimant received treatment for her mental impairments. R. 241.  In an effort to obtain information regarding impact and severity of Claimant's mental impairments on her ability to work, on August 7, 2007, Claimant presented to Dr. Ronald L. Seifer, a licensed psychologist, for a consultative mental status examination.  R. 243-44.

On or about August 7, 2007, Dr. Seifer reviewed Dr. Petersen's treatment notes and diagnoses.  R. 243.  Claimant reported that she is in constant pain and has fibromyalgia and

arthritis.  R. 243.  Claimant described herself as "ugly, fat, and old."  R. 243.  Claimant denied

any mental health treatment, drug or alcohol abuse, or any prior arrests.  R. 243.  Dr. Seifer's

August 7, 2007, mental status examination provides:

> [A]n obese, 44-year-old, . . . who relates she is 5'5 and initially
> tells me she weighs 160 lbs., and corrects this to 260.  She laughs
> at this.  She has graying, short hair and wears a plaid shirt and
> jeans.  Her attitude appeared to be cooperative, albeit somewhat
> naïve. Her motor activity is calm.  She has some mild anxiety with
> nervous laughter in this situation.  She also yawns as she relates
> she might be depressed.  She goes on to describe her affect,
> however, as "being okay," with self-conscious laughter.  She
> relates sleep problems, being awakened by her mother. She reports
> pain in her legs, hands, and hands that go numb.  She says she is
> taking Effexor for a "few years" for "fibromyalgia and pain." Her
> speech is understandable.  Her thought processes appear to be
> logical and sequential.  She denies hallucinations and delusions.
> She is orientated x3.  She recalls 3/3 items after an intervening task
> and at five minutes.  She can spell "world" forward and reverse.
> She claims she does not know how to calculate the number of
> nickels in $1.35 with a laugh.  She does know there are 20 to a
> dollar and can solve a quarter, dime, nickel, and penny adding to
> 41 cents.  She is unable to abstract proverbs or similarities [sic]
> items that are given.  She can solve simple common sense
> problems.  Cognitively, I would estimate her to probably be
> functioning within low average limits overall.  Her judgment and
> insight into the nature of her problems appear to be partial.  She
> appears to have mixed characterological features by her self-
> description, and presentation, of passivity and compliance.

R. 244.  Dr. Seifer diagnoses Claimant with Anxiety Disorder and Personality Disorder.  R. 244.

Dr. Seifer opines that Claimant's impairments impose the following functional limitations:

moderate restriction of activities of daily living; moderate difficulties in maintaining social

functioning; and moderate difficulties in maintaining concentration, persistence, or pace.  R. 244.

On July 31, 2007, due to Claimant's allegations of physical/exertional impairments,

Claimant presented to Dr. Krishna Vara for a consultative physical examination.  R. 246-48.

Based upon his examination, Dr. Vara diagnosed Claimant with: chronic low back pain; fibromyalgia by history; hypertension; hypothyroidism by history; obesity; and chronic depression.  R. 248.  Dr. Vara offered the following opinion: "It is examiner's opinion that this [C]laimant may function at jobs that required [sic] no lifting more than 20 pounds, <u>no prolonged standing, walking for more than 3 hours [sic] an 8 hour workday</u>.  This examiner further recommends a psychiatric evaluation for this [C]laimant."  R. 248 (emphasis added).  Thus, Dr. Vara opines that Claimant can perform a reduced range of light work with no prolong standing or walking more than 3 hours in an eight hour workday.  R. 248.[1]

On July 16, 2009, a hearing was held before the ALJ.  R. 26-60.  Claimant was the only person to testify at the hearing.  R. 26-60.  Claimant testified that she is currently working part-time, between three and twelve hours a week, as a cashier or bagger at Publix Supermarket.  R. 30.  Claimant testified that she cannot work more than that because she cannot stand on her feet or walk for more than three hours.  R. 31.  Claimant also testified that Publix will not allow her to sit during her job.  R. 31.  Claimant also testified that she had been diagnosed with chronic depression. R. 48.

On August 18, 2009, the ALJ issued a decision finding Claimant not disabled.  R. 16-25.  At step-two, the ALJ found that Claimant has the following severe impairments: mild degenerative disc disease of the lumbar spine; back pain; left foot pain; hypothyroidism; and obesity.  R. 18.  The ALJ noted that treatment records from Dr. Peterson indicate that Claimant has been diagnosed with depression and that Dr. Seifer diagnosed Claimant with anxiety disorder and personality disorder.  R. 19.  The ALJ found that Claimant's depression is not a severe

---

[1] It is unclear whether Dr Vara's opinion limits claimant to no standing or walking for more than three hours or only no walking for three hours and no prolonged standing.

-4-

impairment, stating:

> The [C]laimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the [C]laimant's ability to perform basic mental work activities and is therefore, nonsevere.
>
> I making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in sections 12.00C of the Listings of Impairments. . . .
>
> The first functional area is <u>activities of daily living</u>. In this area, the [C]laimant has <u>mild limitation</u>. The [C]laimant testified that she presently lives alone, but is able to take care of herself. She is able to grocery shop, drive, and maintain her residence. She does have outside help with the housekeeping chores. The [C]laimant has been able to continue to work throughout her alleged period of disability on a part-time basis. Although she has had some issues with absenteeism, she has been able to maintain employment on a consistent basis. The [C]laimant would have only a mild limitation in activities of daily living.
>
> The next functional area is <u>social functioning</u>. In this area, the [C]laimant has <u>mild limitation</u>. As stated, the [C]laimant has been able to maintain employment on a part-time basis throughout the alleged period of disability as a cashier/bagger with the Publix supermarket chain. She has demonstrated an ability to adequately interact with the public, co-workers, and supervisors. The [C]laimant testified that she has no friends, but that she does visit with her sisters. The [C]laimant would have only mild limitation in this area.
>
> The third functional area is <u>concentration, persistence or pace</u>. In this area, the [C]laimant has <u>mild limitation</u>. The [C]laimant has been able to maintain employment as a cashier, which involves the handling of money, as well as an expected reasonable pace. She has been able to maintain this employment during the alleged period of disability. <u>The consultative examiner[, Dr. Seifer,] indicated that [C]laimant performed well on mental status tasks</u>. She had no problems with memory, she was able to name 3 out of 3 objects after 5 minutes. The [C]laimant is able to maintain her household which demonstrates and ability to manage funds. The [C]laimant has mild limitations in this area. . . .

> Because the [C]laimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere.

R. 19-20 (emphasis added). Therefore, in determining the severity of the Claimant's mental impairments, including the extent that they affect the Claimant's ability to perform activities of daily living, maintaining social functioning, and in concentration, persistence, and pace, the ALJ based his findings on the Claimant's ability to work part-time and Dr. Seifer's consultative examination. R. 19-20. However, the ALJ never mentions Dr. Seifer's opinion that Claimant has moderate, rather than mild, limitations in all areas of mental functioning. R. 19-20. Thus, the ALJ's findings at step-two directly conflict with Dr. Seifer's opinion. Nowhere in the decision does the ALJ state with particularity the weight given, and the reasons therefor, to Dr. Seifer's opinion. R. 17-25.

In his decision, the ALJ finds that the Claimant retains the RFC to perform a full range of light work with the ability to occasionally climb, balance, stoop, kneel, crouch, and crawl. R. 20. Therefore, the ALJ's RFC conflicts with Dr. Vara's July 31, 2007 opinion regarding Claimant's RFC. Regarding Dr. Vara, the ALJ states the following:

> The [C]laimant's allegations were evaluated by consultative examiner, Dr. Krishna Vara on July 31, 2007. Dr. Vara's exam produced few objective findings. The [C]laimant had a normal gait and station and was able to move from a chair to the examining table with no assistance. She had a full range of motion of the cervical and dorsolumbar spine, with mild tenderness noted at the L4 and the upper back. She had full range of motion of the hips, knees, and ankles. She had a negative straight leg raise. She was able to forward elevate, abduct, and externally and internally rotate the shoulders within normal limits. She had normal range of motion of the elbows and wrists. He handgrip was normal. She

> had normal motor, sensory and reflexes.  An x-ray of the lumbar
> spine showed mild narrowing at L5 and moderate facet arthropathy
> between L5-S1.  R. 22-23.

In the decision, the ALJ does not mention Dr. Vara's opinion regarding Claimant's functional limitations.  R. 16-25.

As for the medical opinion evidence of record, the ALJ states only that "great weight" is given to the opinions of the non-examining state agency psychologists and "some weight" to the non-examining state agency physicians who reviewed the medical record.  R. 24.  As set forth above, the ALJ does not state with particularity the weight that was given, and the reasons therefor, to the opinions of the examining, consultative physicians and psychologists, Drs. Seifer and Vara.  R. 16-24.

On December 13, 2010, the Appeals Council denied Claimant's request for review.  R. 1-5.  On January 13, 2011, Claimant appealed the final decision of the Commissioner to the District Court.  The appeal is ripe for review.

## II.     THE ISSUE.

As set forth above, Claimant raises numerous issues on appeal.  *See* Doc. No. 21 at 1-24.  However, the Court finds that the first issue raised by Claimant, whether the ALJ erred by failing to state with particularity the weight given, and the reasons therefor, to the opinions of Drs. Seifer and Vara is dispositive of the case.  The Commissioner argues that:

> As a threshold matter, it is clear from his decision that the ALJ
> considered both Dr. Vara's and Dr. Seifer's opinions.  Although
> the ALJ did not quantify the exact weight he assigned to these
> opinions, his decision shows that the ALJ discounted portions [sic]
> the opinions after considering them opinion [sic] in context of the
> entire record, as he was entitled to do in assessing RFC.

Doc. No. 22 at 17-18 (emphasis added).  Thus, the Commissioner concedes that the ALJ did not

state with particularity the weight given, and the reasons therefor, to the opinions of Drs. Vara and Seifer. *Id.* The Commissioner argues that the ALJ did not err because it is clear from the context of his decision that the ALJ decided to reject portions of the doctors' opinions based on the record as a whole. *Id.* The Commissioner maintains that the final decision should be affirmed. *Id.* at 21.

## III. LEGAL STANDARDS.

### A. THE ALJ'S FIVE-STEP DISABILITY ANALYSIS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id.* (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

**B.      THE STANDARD OF REVIEW.**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## C.    REMEDIES.

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405(g)(Sentence Four).  To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence.  *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990));  *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984).  A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the

conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences.   *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[2]

## IV.    ANALYSIS.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability.   The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence.  In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. Jan. 24, 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.  *Id*. (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825

---

[2] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

F.2d 278, 279 (11th Cir. 1987)).  The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981) (emphasis added)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

In *Winschel*, the Commissioner argued that the ALJ did not err by failing to state the weight he gave to a treating physician's treatment notes and the reasons therefor because they did not constitute an "opinion." *Id*. at 1178-79.   The Eleventh Circuit disagreed because the treatment notes contained "a description of Winschel's symptoms, a diagnosis, and a judgment about the severity of his impairments, and clearly constituted a 'statement[] from [a] physician . . . that reflect[s] judgments about the nature and severity of [Winschel's] impairment(s), including [Winschel's] symptoms, diagnosis and prognosis, what [Winschel] can still do despite impairment(s), and [Winschel's] physical or mental restrictions.'" *Id*. (quoting 20 CFR §§ 404.1527(a)(2), 416.927(a)(2)). Thus, the treating physician's treatment notes constituted an opinion. *Id*.   The Eleventh Circuit noted that the ALJ only referenced the treating physician once and did not state the weight given to the treating physician's opinion. *Id*.  The Eleventh Circuit reversed stating that "[i]t is possible that the ALJ considered and rejected these . . . medical opinions, but without clearly articulated grounds for such a rejection, we cannot

determine whether the ALJ's conclusions were rational and supported by substantial evidence."
*Id*. (emphasis added).

In this case, it is undisputed that the ALJ did not even mention the opinions of Dr. Seifer and Vara.  While the ALJ discussed portions of both of their respective examinations, the ALJ failed to address their medical opinions regarding the severity and limiting effects of Claimant's impairments.  R. 18-20, 22-23.  The Commissioner concedes that the ALJ failed to state with particularity the weight that was given to the opinions and the reasons therefor.  Doc. No. 22 at 17-8.  As set forth above, an ALJ was required to state with particularity the weight given to those opinions and the reasons therefor.  *Id*.; *see also Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  The ALJ's failure to do so constitutes reversible error.  *Id*.

The Commissioner maintains that it is clear from the context of the ALJ's decision that he considered the opinions and rejected certain portions of them, none which is mentioned by the ALJ in the decision.  This argument lacks merit for four principal reasons.  First, "without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence." *Winshcel*, 631 F.3d at 1178-79 (emphasis added).   Second, an "ALJ cannot reject portions of a medical opinion without providing an explanation for such a decision." *Monte v. Astrue*, Case No. 5:08-cv-101-Oc-GRJ, 2009 WL 210720 at *6 (M.D. Fla. Jan. 28, 2009) (citing *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987)). Third, the ALJ relied exclusively on the opinions of non-examining physicians (R. 24). Drs. Vara and Seifer are one-time examining physicians. While the opinion of a one-time examining physician may not be entitled to deference, especially when it contradicts the opinion of a treating physician, the opinion of an examining physician is generally entitled to more

weight than the opinion of a non-examining physician. *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985). Moreover, the opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining physician. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). Fourth, the Eleventh Circuit has recently held that "a court may not accept appellate counsel's *post hoc* rationalizations for agency actions," and "[i]f an action is to be upheld, it must be upheld on the same bases articulated in the agency's order." *Baker v. Commissioner of Social Security*, 2010 WL 2511385 at *3 (11th Cir. June 23, 2010) (citing *FPC v. Texaco Inc.*, 417 U.S. 380, 397 (1974) (emphasis in original)). Therefore, because the ALJ did not provide any reasons for rejecting portions of the doctors' opinions, this Court cannot accept the Commissioner's post-hoc rationalization for such rejections on appeal. *Id.* For the above stated reasons, the Commissioner's argument is without merit.[3]

The Claimant requests that the Court reverse and award Claimant benefits. Doc. No. 21 at 24. However, the Court is mindful that it "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Therefore, because the ALJ ignored the opinions of Dr. Vara and Seifer, and relied almost exclusively on the opinion of non-examining physicians, it is impossible for the Court to determine whether the final decision is supported by substantial evidence or whether the evidence establishes beyond a doubt that Claimant is disabled. Accordingly, the Court finds

---

[3] The Court also notes that, in his decision, the ALJ relies only on Claimant's ability to work part-time and Dr. Seifer's examination to find that Claimant does not have a severe mental impairment and only mild functional limitations resulting from her depression. R. 18-20. Because the ALJ's finding of mild limitations directly conflicts with Dr. Seifer's opinion of moderate limitations, it appears, without further elaboration from the ALJ, that he substituted his own medical opinion for that of the medical professional who evaluated the Claimant.

that a remand for further proceedings is appropriate.

## V.   CONCLUSION.[4]

For the reasons stated above, it is **ORDERED** that:

1.   The final decision of the Commissioner is **REVERSED and REMANDED** pursuant

to sentence four of Section 405(g) for further proceedings;

2.   The Clerk is directed to enter judgment in favor of Claimant and to close the case.

**DONE and ORDERED** in Orlando, Florida on February 27, 2012.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Bradley K. Boyd, Esq.
Bradley K. Boyd, P.A.
1310 W Eau Gallie Blvd
Melbourne, FL 32935


John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602


Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief

[4] As set forth above, due to the ALJ's error it is impossible for the Court to determine whether the final decision is supported by substantial evidence or if the evidence establishes that Claimant is disabled beyond a doubt. Accordingly, it is unnecessary to address the other issues raised by Claimant.  Nevertheless, the record does contain numerous references and to fibromyalgia, but the ALJ never discussed or analyzed fibromyalgia in the decision.  **On remand the Commissioner shall evaluate Claimant's allegations of disability due to fibromyalgia**.

-15-

Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable M. Dwight Evans
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc.
200 E. Las Olas Blvd
Ft Lauderdale, FL 33301